HENRY PYLE, Appellant, v. NATIONAL' LIFE ASSOCIATION OF DES MOINES, Appellee.

INSURANCE: Mutual Benefit—Surplus Fund—Suit to Cancel
1   Amendments to Articles—Burden of Proof. In a suit in equity to cancel an amendment of its articles of incorporation, adopted by the membership of a mutual benefit association, creating a surplus fund out of interest accruing on the reserve fund, and authorizing the payment of taxes and state fees out of the surplus fund, the burden was upon the policy holder to negative the association's power to do so.

INSURANCE: Mutual Benefit—Surplus Fund—Amendment of Arti-
2   cles of Incorporation. A mutual life assessment company, whose articles provided full power of future amendment, and provided for the maintenance of a reserve fund, a surplus, and an emergency fund, intended as a source for the payments of death losses after the exhaustion of the benefit and other funds, had power to adopt an amendment to its articles, creating a new surplus fund out of the interest accruing upon the reserve fund, and authorizing the payment of taxes and state fees out of the surplus fund; as, under Section 1821, Code, 1897, taxes may be paid from any surplus or emergency fund of such an association, and the so-called reserve fund was, in fact, either a surplus or an emergency fund.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

JULY 2, 1919.

SUIT in equity to cancel certain amendments to the articles of incorporation adopted by the membership of the defendant company. Upon trial had, the district court dismissed the petition. The plaintiff appeals.—*Affirmed.*

*A. D. Pugh,* for appellant.

*Sidney J. Dillon* and *Jas. P. Hewitt,* for appellee.

EVANS, J.—The plaintiff is a policyholder in the defendant company, a mutual life assessment com-

pany. Prior to the year 1915, the articles of incorporation of the defendant company provided for the creation and maintenance of the following funds: Benefit fund, reserve fund, general fund, trust fund. The substance of the later amendments complained of was that they added a fifth fund, under the name "surplus fund." The benefit fund is the primary source of payment of death losses. The reserve fund is an accumulation, in the nature both of a surplus fund and an emergency fund, and is intended as the source of the payment of death losses after the exhaustion of the benefit fund. The general fund is an expense fund. The trust fund comprises advance deposits made by members for the future payment of premiums. Prior to the amendments complained of, the general fund had proved inadequate for the payment of the expenses. There was a deficit therein of about $12,000 or $13,000. A large part of the expenses chargeable to the general fund consisted of taxes and state fees, which were exacted in the different states wherein the defendant company transacted business. The amendment complained of provided:

"The board of directors may authorize the payment of taxes and state fees from the surplus fund of the association."

As one method of accumulating the surplus fund, the amendment provided that the interest accrued and collected on the reserve fund should be paid into such surplus fund.

Though the petition assailed the validity of the adoption of such amendments, it is now conceded that the amendments were legally adopted, except that the power of the company to adopt the same is challenged. Prior to the adoption of the amendments, the accruing interest of every fund became a part of such fund. Inasmuch as the amendments created the surplus fund out of the interest accruing upon the reserve fund, it is contended that the effect

thereof was to appropriate the reserve fund to the payment of taxes and state fees, and that this was in excess of the power of the company, because such reserve fund was accumulated for mortuary purposes only. The question presented, therefore, is double-headed:

(1) Did the defendant company, by amendment of its articles of incorporation, have the power to create or designate a surplus fund by turning thereto the accruing interest of the reserve fund?

(2) If nay, did the defendant, by amendment, have power to authorize the board of directors to pay taxes and state fees out of the reserve fund?

The burden is upon the appellant to establish the negative of each proposition. The general line of argument presented by the appellant is that the defendant company holds its funds in trust for the purpose for which they were paid into its hands, and that it cannot divert such funds from such purpose. In other words, it is said that the reserve fund was a mortuary fund, and was collected for the purpose of paying death losses in the emergency that the benefit fund should become exhausted. This argument may all be conceded as being eminently sound, but it does not by any means furnish a ground of attack upon the validity of these amendments, or upon the power of the company to pay the taxes and state fees out of the reserve fund. The payment of state fees and taxes is a condition precedent to the transaction of business anywhere by the company. It is in the nature, therefore, of a preferred lien on some fund or funds. Whether such preferred lien could reach to every fund, we need not determine. So far as the power to adopt the amendment is concerned, it would

1. INSURANCE: mutual benefit: surplus fund: suit to cancel amendments to articles: burden of proof.

2. INSURANCE: mutual benefit: surplus fund: amendment of articles of incorporation.

seem clear that such amended provision could properly have been included in the original articles of incorporation. The articles provided full power of future amendment. The defendant did not, therefore, exceed its power of amendment. Furthermore, if the amendment had not been adopted, we think the company had power to have paid such fees and taxes out of the so-called reserve fund.

Code Section 1821 provides:

"In case this or any other state shall impose or levy any tax on any company or association, the same may be paid from *any surplus or emergency fund* of such company or association."

The reserve fund was not, in name, a *surplus* or an *emergency* fund. It was in fact, however, both a surplus fund and an emergency fund. True, as contended by appellant, the emergency was a mortuary emergency, and the surplus a mortuary surplus; but the statute is broad and sweeping, and applies to "*any surplus*" and to "*any emergency fund.*" It is enough, therefore, to bring it within this statute that the so-called reserve fund was, in fact, either a surplus fund or an emergency fund. We reach the conclusion, therefore, that neither of the questions propounded can be answered in the negative. The judgment below is, therefore,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.